**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| REALTIME DATA, LLC d/b/a IXO, | ) | |
| | ) | |
| *Plaintiff,* | ) | Case No. 1:11-cv-6696-KBF |
| | ) | 1:11-cv-6701-KBF |
| vs. | ) | 1:11-cv-6704-KBF |
| | ) | |
| MORGAN STANLEY, ET AL., | ) | JURY TRIAL DEMANDED |
| | ) | ECF Case |
| *Defendants.* | ) | |
| | ) | |

**DEFENDANTS' SUPPLEMENTAL SUBMISSION IN SUPPORT OF PARTIAL
SUMMARY JUDGMENT OF INVALIDITY OF THE PATENTS-IN-SUIT FOR
FAILURE TO SATISFY THE DEFINITENESS AND WRITTEN DESCRIPTION
REQUIREMENTS OF 35 U.S.C. § 112**

Defendants hereby respectfully submit supplemental evidence in support of the pending

motion for summary judgment that claims 1 and 8 of U.S. Patent 7,714,747 ("the '747 patent")

and claim 1 of U.S. Patent 7,777,651 ("the '651 patent") are invalid for lack of written

description support.  (11-6696, Dkt. No. 428.)

On June 4, 2012, Defendants deposed Mr. Frank V. DeRosa, the patent attorney who

wrote the applications leading to all three of the patents in suit, and who also wrote the

application leading to Realtime's earlier U.S. Patent 6,195,024 ("the '024 patent") (Decl. of

Gregory H. Lantier ("Lantier Decl."), Ex. A).  The Court may recall that the application that

issued as the '024 patent (filed December 11, 1998) is the oldest in the '747 patent family.

(Defs' Tutorial at 13.)  In a continuation-in-part application dated October 29, 2001, the

inventors added material to the '024 patent application.  That application eventually issued as

U.S. Patent No. 6,624,761 ("the '761 patent").  The '761 patent shares a common specification

with the '747 patent.  As revealed during the deposition of Mr. DeRosa and discussed in further

detail below, there are very few differences between the specifications of the '024 and '747 patents, and none of the added material include any discussion of "content dependent" decoders or a "descriptor" that indicates whether a content dependent encoder was used during compression.  Accordingly, Mr. DeRosa confirms that claims 1 and 8 of the '747 patent and claim 1 of the '651 patent are invalid for failing the written description requirement.  *See Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (the test for written description is "whether the disclosure of the application relied upon reasonably convey to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date.").

I.      **The '024 Patent Discloses Decoders and Descriptors For Use With Only A Content Independent Data Compression and Decompression System.**

According to Mr. DeRosa, the figures and written description of the '024 patent are limited to a content ***independent*** data compression and decompression system.  (*See*, *e.g.*, Feit Decl. Ex. B, DeRosa Tr. 58:24-60:22 (testifying that Figures 2, 4, 6, 8 and 9 of the '024 patent are "block diagrams[s] of a content independent data compression system"); *id.* at 60:23-61:07 (testifying that Figure 11 is a "block diagram of a content independent data decompression system"); *see also* '024 Patent, 6:38-40 ("The present invention is directed to systems and methods for providing content independent lossless data compression and decompression").)

The compression methods and system disclosed in the '024 patent had nothing to do with content ***dependent*** data compression and decompression.  Indeed, when asked "[d]id the invention of this patent [the '024 patent] have anything to do with content dependent data compression," Mr. DeRosa said that "figure 1 [which the patent labels as Prior Art] was a

description of what was presumed to be content dependent, and the rest were descriptions of what was presumed to be content independent."[1] (DeRosa Tr. 55:13-21.)

Since the systems and methods of the '024 patent provide *only* content *independent* data compression, there can be no dispute that the '024 patent does not provide written description support for "decompressing the data block with a . . . decoder utilizing content *dependent* data decompression, if the descriptor indicates the data block is encoded utilizing content *dependent* data compression," which are the at-issue limitations in claim 1 of the '651 patent and claims 1 and 8 of the '747 patent. Therefore, to the extent there is any support for "content dependent" decoders and descriptors, *it must derive from material that was added as part of the continuation-in-part application*. According to Mr. DeRosa, such new material was limited to Figures 13A though 18D and col. 15, line 64 through col. 26, line 34 of the '761 patent, which corresponds to col. 15, line 50 through col. 26, line 8 of the '747 patent. (DeRosa Tr. 64:04-64:24, 69:04-15.)[2]

## II.   The '747 Patent Describes the Content Independent Decoders and Descriptors of the '024 Patent, and Nothing More.

Based on Mr. DeRosa's testimony, it is clear that the '747 patent (which the '651 patent incorporates by reference) discloses two different types of systems. The first is the content *independent* system of the '024 patent, which is represented in Figures 2-12 and its corresponding portions of the patent specification. (*See* DeRosa Tr., 63:13-64:03, 78:13-80:12; '024 patent, 5:52-6:14, 7:4-16:14.) The second is what the '747 patent identifies as "other

---

[1] DeRosa further testified that "content independent data compression," which Realtime's expert says has the same meaning as "content dependent data compression," is in fact "different." (DeRosa Tr. 62:16-23.)

[2] Lantier Decl. Ex. C is DeRosa Deposition Exhibit 14. The exhibit compares the specifications of the '024 and '747 patent using a standard compare-write computer program. This was given to Mr. DeRosa during his deposition to use as he wished in comparing the two patents. (*See* DeRosa Tr. 78:13-79:08).

embodiments" in which "data compression is achieved using a ***combination*** of content ***dependent*** data compression and content independent data compression." ('747 patent, 15:50-53.)  This ***combination*** content independent/dependent system was not disclosed in the '024 patent, but was added to the continuation-in-part application that eventually led to the '747 patent.  This combination system is represented in the new material identified by Mr. DeRosa, *i.e.*, Figures 13A through 18D and col. 15, line 50 through col. 26, line 8 of the '747 patent.

However, ***none of the added material*** discloses anything about any decoders that might be used in the "combination" content dependent/content independent system of Figs. 13A through 18D.  In fact, the added material relating to the combination system does not even include the word "decode" in any form.  The only decoders shown (Figs. 11-12) or described (14:39-15:49) anywhere in the '747 patent are the decoders that are used with the content independent system.  Accordingly, the disclosed decoders in the '747 (and '651) patents are the same content independent decoders disclosed in the '024 patent, and there is no discussion or disclosure of any decoders used with the combination system that was added when the applications that led to the '747 and '651 patents were filed.  Plaintiff's expert, Dr. Shamos, has stated that such "conventional decompression methods," as those disclosed in the '024 patent, "would fail at least because they would not be able to make use of the descriptors in the data stream."  (11-6696, Dkt. No. 447, ¶ 6.)  Accordingly, there is no dispute that there is no disclosure of decoders that could be used in connection with the combination content dependent/content independent system discussed in the '747 and '651 patents.

Likewise, Mr. DeRosa's testimony confirms that the '747 patent does not add anything with respect to the descriptors discussed and described in the '024 patent.  Indeed, the language used in both the '024 and '747 patents to describe the descriptors used in the content

*independent* data compression system of Figs. 2-12 (8:41-43, 53-56, 14:54-59) is exactly the same as that used in the '747 patent to describe those used in the **combined** content independent/content **dependent** systems of Figs. 13A-18 (18:51-54, 63-66; 21:36-39, 48-51; 24:28-31, 40-44; 25:34-37, 47-50).  The descriptors used in the former system quite clearly cannot "indicate" that content dependent compression was used to encode the data; and there is no disclosure of anything else in the descriptor that will do so.  Accordingly, there is no disclosure in the patent for a "descriptor" that indicates whether the data was encoded utilizing content dependent ("D" encoders) or content independent ("E" encoders) data compression.

Accordingly, Mr. DeRosa's testimony confirms that the disputed claims are invalid.


Dated:  June 13, 2012                          Respectfully submitted,

                                               By: */s/ Gregory H. Lantier*
                                               Gregory H. Lantier
                                               WILMER CUTLER PICKERING HALE AND DORR
                                               LLP
                                               1875 Pennsylvania Ave., N.W.
                                               Washington, DC 20006
                                               Phone: (202) 663-6327
                                               Fax: (202) 663-6363
                                               Gregory.Lantier@wilmerhale.com

                                               William F. Lee
                                               Mark G. Matuschak
                                               WILMER CUTLER PICKERING HALE AND DORR
                                               LLP
                                               60 State Street
                                               Boston, MA 02109
                                               Phone: (617) 526-5000
                                               Fax: (617) 526-6000
                                               William.Lee@wilmerhale.com
                                               Mark.Matushak@wilmerhale.com

                                               **Attorneys for Credit Suisse Holdings (USA),
                                               Inc. and Credit Suisse Securities (USA),
                                               LLC**

/s/ Daniel A. DeVito
Daniel A. DeVito
SKADDEN ARPS SLATE MEAGHER & FLOM
LLP
Four Times Square
New York, NY 10036
Tel: (212) 735-3000
Fax: (917) 777-3210
Daniel.DeVito@skadden.com

Matthew D. Buchanan
Gareth DeWalt
SKADDEN ARPS SLATE MEAGHER & FLOM
LLP
525 University Avenue, Suite 1100
Palo Alto, CA 94301
Phone: 650-470-4500
Fax: 650-470-4570
matthew.buchanan@skadden.com
gareth.dewalt@skadden.com

***Attorneys for Defendants Morgan Stanley,
Morgan Stanley & Co. Incorporated, J.P.
Morgan Chase & Co., J.P. Morgan
Securities, Inc., J.P. Morgan Clearing Corp.,
The Goldman Sachs Group, Inc., Goldman,
Sachs & Co., and Goldman Sachs Execution
& Clearing, L.P.***

By: /s/ Roger Brian Cowie
Edwin R. DeYoung
Roger Brian Cowie
Roy W. Hardin
M. Scott Fuller
Galyn Gafford
LOCKE LORD LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201-6776
Telephone: (214) 740-8000
Facsimile: (214) 740-8800

Gregory T. Casamento
LOCKE LORD LLP
Three World Financial Center

New York, New York 10281-2101
Phone: (212) 415-8600
Fax: (212) 303-2754

**Attorneys for Defendants HSBC Bank USA, N.A.
and HSBC Securities (USA), Inc.**

By: /s/ Amanda Hollis
Steven Cherny
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Phone: 212-446-4965
Fax: 212-446-4900
steven.cherny@kirkland.com

Amanda Hollis
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Phone: 312-862-2011
Fax: 312-862-2200
amanda.hollis@kirkland.com

**Attorneys for Defendants BNY ConvergEx
Group, LLC and BNY ConvergEx
Execution Solutions, LLC**

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing document was served electronically on June 13, 2012 on all counsel of record.

/s/ Gregory H. Lantier
Gregory H. Lantier