# EXHIBIT B

# EXCERPTS

Skadden, Arps — New York



3 1948 00330722 3

Practising Law Institute

Intellectual Property Law Library

# Faber on Mechanics of Patent Claim Drafting

## Sixth Edition

Formerly
Landis on Mechanics of Patent Claim Drafting

# Robert C. Faber

# Faber on
# Mechanics of Patent
# Claim Drafting

## SIXTH EDITION

## ROBERT C. FABER

(Formerly *Landis on Mechanics
of Patent Claim Drafting,*
by Robert C. Faber)

Incorporating Release No. 7
June 2012
#38090

Practising Law Institute
New York City

**16966**

*This work is designed to provide practical and useful information on the subject matter covered. However, it is sold with the understanding that neither the publisher nor the author is engaged in rendering legal, accounting or other professional services. If legal advice or other expert assistance is required, the services of a competent professional should be sought.*

---

## QUESTIONS ABOUT THIS BOOK?

If you have questions about replacement pages, billing or shipments, or would like information on our other products, please contact our **customer service department** at (800) 260-4PLI.

For library-related queries, **law librarians** may email: libraryrelations@pli.edu.

For any other questions or suggestions about this book, contact PLI's **editorial department** at: editorial@pli.edu.

For general information about Practising Law Institute, please visit **www.pli.edu**.

---

Copyright © 1986, 1993, 1994, 1995, 1996, 1997, 1998, 1999, 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, 2011, 2012 by Practising Law Institute. All rights reserved. Printed in the United States of America. No part of this publication may be reproduced, stored in a retrieval system, or transmitted in any form by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Practising Law Institute.

Library of Congress Catalog Card Number: 2008937996
ISBN: 9781402411342

§ 2:4    FABER ON MECHANICS OF PATENT CLAIM DRAFTING

How many claims may be presented and how different they must be from each other are discussed in sections 7:1–8:4. For an *example of a complete claims layout:*

**I claim:**

1.   **A pencil having . . .**

2.   **A pencil as recited in claim 1, wherein . . . [more detail].**

3.   **A pencil comprising . . . [the most detailed combination acceptable to the applicant].**

A claim number is not reused. If a claim is canceled, its claim number is not reused in that patent application. Added claims receive the next number in sequence after the last claim. Claims are not renumbered during application prosecution, except in a continuing application; some claims from a parent application, especially later added claims, may be renumbered in the continuing application. (At conclusion of prosecution, the claims are renumbered by the Patent Office for the patent to be printed.)

### Summary

*Present multiple claims in a logical order and number them consecutively.*

## § 2:4    Preamble

Claims should have "preambles,"[12] or introductory statements, the purposes of which are to indicate the statutory class of the claim (often by implication from the words in the preamble), and to name or define the thing that is to be claimed. It defines the field of the invention claimed. Preambles may be quite long or very short, depending on the type of claim one is using, but a shorter preamble is preferred. For example, in *Karsten Manufacturing Corp. v. Cleveland Golf Co.,*[13] the patent claims all recited "an improved correlated set of iron-type golf-clubs." The court held that "correlated set" was a claim limitation, although it appeared only in the preamble. It appears that it was an unessential limitation for patentability. Had it been omitted, the claim would have been broader.

The best type of preamble for most claims is simply a general definition of the combination to be claimed, with whatever detail or length is necessary to define what appears in the body of the claim.

---

12.   M.P.E.P. § 2111.02.
13.   Karsten Mfg. Corp. v. Cleveland Golf Co., 242 F.3d 1376, 58 U.S.P.Q.2d (BNA) 1286, 1288 (Fed. Cir. 2001).

The preamble and the body of the claim should be consistent one with the other, two parts making up a whole. The preamble cannot be written properly until the scope of the claim-to-be is determined, and the preamble should be checked for consistency after the claim has been finished. But a claim is not per se indefinite if the body of the claim recites additional elements not supported by the preamble, so long as the entire claim apprises a person of ordinary skill of the scope of that claim.[14] When a claim is revised or amended, the preamble should be scrutinized for consistency.[15]

One of the best sources for the claim preamble is the title of the invention at the head of the specification. Sometimes that title is modified to conform to the claim preamble. The title of the invention is typically short, and so should be the preamble. But if the claim is to an element or a subcombination of a fuller invention, using the title as the preamble could cause the preamble to be misleading as too encompassing. Further, where the title differs from the claim preamble, the title does not define the claimed invention, as it would be reading a limitation from the specification into the claim.[16]

To avoid a too-limited-scope preamble, the claim writer might be tempted to merely recite the broad "Apparatus comprising" or use "device" or a similar nonspecific noun. But a too-broad-scope preamble is also not good practice, although not improper. Also, the examiner will likely require that a preamble more descriptive of the invention be substituted.

The preamble should focus on the actual subject or field of the invention and not cover too broad a field, if inapplicable. For an invention in a bicycle, for example, a preamble that says "vehicle" would appear to be of broader scope than a preamble that says "bicycle." Yet if the invention is clearly directed to a bicycle, there is no benefit to having a preamble say "vehicle," which is more encompassing than the invention itself. The preamble should be realistically narrow in scope. Conversely, if the preamble says "bicycle," but the invention is adaptable not only for bicycles but for motorcycles, and if an infringer were later to market a product that had all of the feature limitations in the claim, but that was a motorcycle rather than a bicycle, the infringer might argue that the claim does not reach the accused product because the claim is limited in scope to a bicycle. The preamble must be sufficiently broad to cover the product in the preferred embodiment to which the inventor has directed his attention

---

14.   M.P.E.P. § 2173.05(e).
15.   As to the effect of limitations in the preamble, see below and also see section 6:7, on new use claims; preamble limitations.
16.   Pitney Bowes, Inc. v. Hewlett-Packard Co., 182 F.3d 1298, 51 U.S.P.Q.2d (BNA) 1161 (Fed. Cir. 1999).

(bicycle), but also to cover other embodiments, as "two-wheeled vehicles," to which the invention may be directed.

In general, one should avoid any unnecessary limitations or statements anywhere in the broader claims, even in the preamble. For example, in *Bicon, Inc. v. Straumann Co.*,[17] the patentee intended to claim "an emergence cuff" for a dental procedure, but noted in the preamble that the cuff was to be used during placement of an "abutment" on a root. Even though the abutment might have been treated as a workpiece and not a claimed element, the presence of "abutment" in the preamble, as well as its appearance in the body of the claim, converted the abutment to a claimed element.[17.1] M.P.E.P. section 2173.05(e) specifically excludes a requirement that the preamble include every critical element in the body of the claim. In the example given, the preamble recited a hanger and a loop, whereas the claim body included as a critical element a linear member. Its absence from the preamble did not render the claim indefinite.

Some practitioners briefly describe an object of the invention in a preamble ("Apparatus for shaking articles to dislodge impurities"). This is unnecessary, however, as the preamble is preferably a short introduction to the body of the claim. Also, there may be other objects of the invention, and recitation of one may impliedly exclude accomplishment of others when the claim is later interpreted.

Where the invention operates upon a workpiece, some practitioners include relevant details of the workpiece in the preamble ("Apparatus for shaking articles having a soft covering over a plurality of frangible legs . . ."). Usually, description of the workpiece in the preamble is not needed. As shown in *Bicon, Inc. v. Straumann Co.*, the presence of a workpiece in the preamble might cause the claim to be construed in such a way that the element intended to be recited as a workpiece will instead be a necessary element of the claimed combination.[17.2] Instead, as a particular element of the apparatus acts upon the workpiece, the relevant interaction of the element upon the workpiece is described in the body of the claim, and possibly in a "whereby" clause. Sometimes, however, it is appropriate to describe the workpiece somewhat fully in the preamble as it may not otherwise be easy to comprehend the rest of the claim. That is true more often in a method claim wherein the workpiece or the apparatus used in the method in the body of the claim is introduced in the preamble. In that case, the

---

17.    Bicon, Inc. v. Straumann Co., 441 F.3d 945, 78 U.S.P.Q.2d (BNA) 1267 (Fed. Cir. 2006).

17.1.  Computer Docking Station Corp. v. Dell, Inc., 519 F.3d 1366, 86 U.S.P.Q.2d (BNA) 1129 (Fed. Cir. 2008).

17.2.  *See* Marrin v. Griffin, 599 F.3d 1290, 94 U.S.P.Q.2d (BNA) 1140 (Fed. Cir. 2010).

better choice is to have the fuller preamble. But the claim writer may then have limited the claim scope to the elements in the preamble.[18] An example of an overlong preamble that may have confused the Board of Appeals somewhat appears in *In re Stencel.*[19]

On the other hand, the preamble may have to be longer because, in order to understand an invention, one must understand its context. The title of the invention at the head of the specification may be slightly different, but there is no short claim preamble that does the job. Therefore, sometimes the purpose of the invention is recited in the preamble before the transition word, as in "Apparatus for treating a web to prevent tearing, the apparatus comprising. . . ."[20]

In composition of matter claims, where the composition may have no recognized name, it may be necessary to describe certain qualities or features of the composition in the preamble in order to clearly explain or understand the elements in the following body of the claim, for example, "A composition having a density of x and a color y with a brightness level not less than z, comprising material a, at least 10% of material b and material c." The elements of the composition are better understood with a fuller preamble. But the specifics in the preamble, between "composition" and "comprising," may alternately be included in a functional or "whereby" clause placed after the elements are recited in the body of the claim.

Long preambles mentioning elements other than the invention itself may make what the subsequent transition word refers to ambiguous (see section 2:5). For example, in "Apparatus for shaking articles to dislodge impurities comprising . . ." clearly, the transition word "comprising" refers back to the apparatus, not the impurities. For clarity, the preamble should repeat the key word of the name of the invention in the preamble before the transition word, as "Apparatus for shaking articles to dislodge impurities, the apparatus comprising. . . ." A too-short preamble, compared with the elements in the body of the claim, may not be indefinite.[21]

With the prevalence of the use of dependent claims, any dependent claim should usually cover the same invention as its preceding or parent claim. If the independent claim begins "Apparatus for shaking articles," a following dependent claim should not claim a different

---

18.  Eaton Corp. v. Rockwell Int'l Corp., 323 F.3d 1332, 66 U.S.P.Q.2d (BNA) 1271, 1277 (Fed. Cir. 2003).
19.  *In re* Stencel, 4 U.S.P.Q.2d (BNA) 1071 (Fed. Cir. 1987).
20.  *See* Marrin v. Griffin, 599 F.3d 1290, 94 U.S.P.Q.2d (BNA) 1140 (Fed. Cir. 2010); Heidelberg Harris, Inc. v. Mitsubishi Heavy Indus., Ltd., 56 U.S.P.Q.2d (BNA) 1714, 1719 (Fed. Cir. 2000) (labeled unpublished); Pitney Bowes, Inc. v. Hewlett-Packard Co., 182 F.3d 1298, 1305, 51 U.S.P.Q.2d (BNA) 1161, 1165–66 (Fed. Cir. 1999).
21.  M.P.E.P. § 2173.05(e).

apparatus, for example, "A device for containing articles to be shaken, as recited in Claim 1, comprising. . . ." A dependent claim includes all of the text of its preceding claims. The dependent claim just described, however, appears to claim a different invention than or less than all of the invention of its preceding claim. Hence, a dependent claim should have the preamble of the previous claim upon which it is dependent, "The apparatus for shaking articles of Claim 1. . . ." If the previous claim is to "bicycle," the dependent claim should not be to "vehicle." Change one or the other claim for consistency.

Often the preamble of a dependent claim is shortened to the key word or words, for example, the noun, of the preamble of its preceding independent claim ("The apparatus of Claim 1"). As long as that leaves no ambiguity, the shortened preamble is even preferred.

Claims of different scope are often used to describe different aspects of an entire invention, a combination and a subcombination, a genus and a species, etc. A different preamble may be used for each different claim grouping: "Apparatus for shaking articles . . ." and "Device for containing articles to be shaken. . . ." Just make each different invention or aspect of one invention subject to separate claims, each group of claims with a separate preamble.

*Jepson* claims under Rule 75(e) have a different type of preamble, which is rather lengthy.[22] It includes a name of the invention and then recites the elements of that complete apparatus, process, composition, or article that are in the prior art.[23] This is a special situation. Because the preamble of a *Jepson* claim recites elements of a claimed invention and defines not only the context or field of the invention but also its scope,[24] an element or limitation that appears only at the start of the preamble is considered a claim element.[25]

The preamble is often the basis used by the PTO to assign the application to a particular Examining Art Unit for review of and action on the application. Preferably, the preamble describes the field of the invention to correctly guide the invention classifiers when the application is filed and initially assigned to an Art Unit. Furthermore, the preamble defines the scope of relevant prior art. Accuracy in the preamble is recommended.

Some case precedents suggest that the content of the preamble does not limit the scope of the claim.[25.1] However, in *Bell Communications*

---

22. *See infra* section 6:8.
23. M.P.E.P. § 608.01(m).
24. Epcon Gas Sys., Inc. v. Bauer Compressors, Inc., 279 F.3d 1022, 61 U.S.P.Q.2d (BNA) 1470 (Fed. Cir. 2002).
25. Rowe v. Dror, 42 U.S.P.Q.2d (BNA) 1550, 1553 (Fed. Cir. 1997).
25.1. Allen Eng'g Corp. v. Bartell Indus., Inc., 299 F.3d 1336, 62 U.S.P.Q.2d (BNA) 1769 (Fed. Cir. 2002).

*Research, Inc. v. Vitalink Communications Corp.,*[26] the court said that the determination is made with reference to the specific claim and there found the preamble element limiting.

The M.P.E.P. states at section 2111.02 that the preamble is not given the effect of a limitation unless it breathes life and meaning into the claim.[27] In *American Medical Systems, Inc., v. Biolitec, Inc.,*[27.1] the court also provides the additional reason the preamble is given effect as a claim limitation—the preamble recites essential structure or steps of the claimed apparatus or method.

Repeated references in the specification to liners as "blown-film" liners, including in the preferred embodiment, and in each claim, made "blown-film" in the preamble a substantive claim limitation, as it gave life, meaning, and vitality to the claims.[28] Phraseology in the preamble that limits the structure must be given weight. See the cases discussed in that section of the Manual.[29]

The Federal Circuit recently restated the rule:

> [T]he preamble simply states the intended use or purpose of the invention. . . . Such a preamble usually does not limit the scope of the claim unless the preamble provides antecedents for ensuing claim terms and limits the claim accordingly.[30]

A preamble term "portable computer" that does not appear in the body of the claim limits the scope of the claim and excludes nonportable computers, because the specification and the prosecution

---

26.   Bell Commc'ns Research, Inc. v. Vitalink Commc'ns Corp., 55 F.3d 615, 34 U.S.P.Q.2d (BNA) 1816 (Fed. Cir. 1995).

27.   Intirtool Ltd. v. Texar Corp., 369 F.3d 1289, 70 U.S.P.Q.2d (BNA) 1780 (Fed. Cir. 2004); Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc., 289 F.3d 801, 62 U.S.P.Q.2d (BNA) 1781 (Fed. Cir. 2002); Griffin v. Bertina, 285 F.3d 1029, 62 U.S.P.Q.2d (BNA) 1431 (Fed. Cir. 2002); Pitney Bowes, Inc. v. Hewlett-Packard Co., 182 F.3d 1298, 51 U.S.P.Q.2d (BNA) 1161 (Fed. Cir. 1999) ("necessary to give life, meaning and vitality" to the claim).

27.1.   Am. Med. Sys., Inc., v. Biolitec, Inc., 618 F.3d 1354, 96 U.S.P.Q.2d (BNA) 1652 (Fed. Cir. 2010).

28.   Poly-America LP v. GSE Lining Tech., Inc., 383 F.3d 1303, 72 U.S.P.Q.2d (BNA) 1685 (Fed. Cir. 2004); Vizio, Inc. v. Int'l Trade Comm'n, 605 F.3d 1330, 95 U.S.P.Q.2d (BNA) 1353 (Fed. Cir. 2010).

29.   *See also* Corning Glass Works v. Sumitomo Elec. U.S.A., Inc., 868 F.2d 1251, 1257, 9 U.S.P.Q.2d (BNA) 1962 (Fed. Cir. 1989); *In re* Burke, Inc., 786 F. Supp. 1537, 22 U.S.P.Q.2d (BNA) 1368, 1371 (C.D. Cal. 1992).

30.   C.R. Bard, Inc. v. M3 Sys., Inc., 157 F.3d 1340, 48 U.S.P.Q.2d (BNA) 1225, 1230–31 (Fed. Cir. 1998), *cert. denied*, 526 U.S. 1130 (1999). *See* Gerber Garment Tech., Inc. v. Lectra Sys., Inc., 916 F.2d 683, 688–89, 16 U.S.P.Q.2d (BNA) 1436, 1441 (Fed. Cir. 1990); Heidelberg Harris, Inc. v. Mitsubishi Heavy Indus., Ltd., 56 U.S.P.Q.2d (BNA) 1714, 1719–20 (Fed. Cir. 2000) (labeled unpublished); Allen Eng'g Corp. v. Bartell Indus., Inc., 299 F.3d 1336, 63 U.S.P.Q.2d (BNA) 1769, 1774 (Fed. Cir. 2002).

history emphasized portability. Therefore, a computer with separate peripheral devices joined by connections was not covered by the claims.[30.1]

When a term ("communication system") appears in the preamble, but not in the body of the claim, and the court determines that the term does not give "life, meaning or vitality" to the claim, then its absence from an accused device does not avoid infringement of the claim.[31] In *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*,[31.1] the preamble language was not needed to give meaning to the claims, which recited a structurally complete invention without the preamble language, and the prosecution history did not show that the preamble language was necessary to patentability. In *American Medical Systems, Inc., v. Biolitec, Inc.*,[31.2] "photosensitive effect" was added to the preamble, but not to distinguish the claim from prior art or to define or refine the scope of claims. It was simply a descriptive name for the invention recited in the body of the claims. The term does not limit the claims. The argument by dissenting Judge Dyk appears to this author to be more persuasive: that "all preambles are limiting." Why else include material in a claim that is not binding? If a preamble element is not treated as limiting, applicants might make one argument before the examiner and take a different position in litigation for this nonlimiting claim element.

In *Bard*, the preamble provided antecedents by reciting the structure into which needles fit, and the claim was not anticipated or obvious over prior art, which lacked the preamble features. The preamble features saved the claim validity, but those same elements narrow the scope of the claim to be asserted against infringements.

Mere recitation of a structural term in the claim preamble, even when that term is used in the body of the claim, does not render that preamble's structure also part of the claim.[31.3] In the cited case, the court found the language to merely state an intended use. The same preamble may also include elements that are part of the claimed invention and can limit claim scope.[31.4] However, in *Bicon, Inc. v.*

---

30.1.   Computer Docking Station Corp. v. Dell, Inc., 519 F.3d 1366, 86 U.S.P.Q.2d (BNA) 1129 (Fed. Cir. 2008).

31.   NTP, Inc. v. Research in Motion Ltd., 261 F. Supp. 2d 423, 67 U.S.P.Q.2d (BNA) 1574 (E.D. Va. 2002).

31.1.   Aspex Eyewear, Inc. v. Marchon Eyewear, Inc., 672 F.3d 1335, 101 U.S.P.Q.2d (BNA) 2015 (Fed. Cir. 2012).

31.2.   Am. Med. Sys., Inc., v. Biolitec, Inc., 618 F.3d 1354, 96 U.S.P.Q.2d (BNA) 1652 (Fed. Cir. 2010).

31.3.   Marrin v. Griffin, 599 F.3d 1290, 94 U.S.P.Q.2d (BNA) 1140 (Fed. Cir. 2010).

31.4.   *Id.* (claim preamble had a statement of purpose or intended use, which was not a limitation of claim scope, whereas structure recited in the preamble was a limitation of the same claim).

*Straumann Co.,*[32] the "abutment" in the preamble was also recited in elements of the same claim after the transition, and the court construed the claim such that the abutment was a claim element, not a field of use or a workpiece.

In *Pitney Bowes, Inc. v. Hewlett-Packard Co.,*[33] the intended purpose of the invention stated in the preamble as "producing on a photoreceptor an image of generated shapes made up of spots" was held not to be a mere statement of intended field of use, but was so intimately meshed with the remaining claim language that the preamble and the remainder of the claim were to be construed as one unified internally consistent recitation of the invention.[34]

In *MBO Laboratories, Inc. v. Becton, Dickinson & Co.,*[35] the term "immediately," used to indicate time in the claim preamble, was deemed an essential feature of the structure claimed, so the time element was considered in construing the claims having that word in the preamble, but not other claims from which that word was absent.

In *Eaton Corp. v. Rockwell Int'l Corp.,*[36] the claim preamble of a method claim had a detailed description of structure that performs the recited method steps. The court there found that the claim was an example of the drafter's using both the preamble and the body of the claim to define the invention, and the preamble was given limiting effect.[37]

Another example is found in *Jansen v. Rexall Sundown, Inc.,*[38] wherein the preamble was to a method of "treating or preventing" pernicious anemia and the body of the claim recited that the treatment is provided "to a human in need thereof." The Court said that the preamble sets forth the objective of the method, the body of the claim directs on whom the method be performed. Therefore, the body of the claim gives meaning to the preamble's statement of purpose, making the preamble not merely a statement of effect that may or may not be

---

32. Bicon, Inc. v. Straumann Co., 441 F.3d 945, 78 U.S.P.Q.2d (BNA) 1267 (Fed. Cir. 2006).

33. Pitney Bowes, Inc. v. Hewlett-Packard Co., 182 F.3d 1298, 51 U.S.P.Q.2d (BNA) 1161 (Fed. Cir. 1999).

34. On Demand Mach. Corp. v. Ingram Indus., Inc., 442 F.3d 1331, 78 U.S.P.Q.2d (BNA) 1428 (Fed. Cir. 2006) (preamble is limiting as it states the framework of the invention). *See* Hearing Components, Inc. v. Shure, Inc., 600 F.3d 1357, 94 U.S.P.Q.2d (BNA) 1385 (Fed. Cir. 2010).

35. MBO Labs., Inc. v. Becton, Dickinson & Co., 474 F.3d 1323, 81 U.S.P.Q.2d (BNA) 1661 (Fed. Cir. 2007).

36. Eaton Corp. v. Rockwell Int'l Corp., 323 F.3d 1332, 66 U.S.P.Q.2d (BNA) 1271, 1277 (Fed. Cir. 2003).

37. *See also* Microprocessor Enhancement Corp. v. Tex. Instruments, Inc., 520 F.3d 1367, 86 U.S.P.Q.2d (BNA) 1225 (Fed. Cir. 2008).

38. Jansen v. Rexall Sundown, Inc., 342 F.3d 1329, 68 U.S.P.Q.2d (BNA) 1154 (Fed. Cir. 2003).

appreciated. This is the reverse of the normal reasoning for considering the preamble as a limitation to be met, that is, here the body of the claim gives life and meaning to the preamble.

Many of the reasons for a term in the preamble to be construed as a required element of the claim were present when the term was "multitasking," because it appeared forty-five times in the patent, was in the title of the patent, was used to distinguish prior art in the Background of the Invention, and was used to distinguish over prior art during examination,[38.1] and because the construction was derived from the language of the patent itself.[38.2]

Where the preamble recites "A method for treating sunburn" and the body of the claim says "topically applying to the skin sunburn a fatty acid . . . ," the claim scope was limited to the purpose stated in the preamble, and the court concluded the claim was directed to a new use for the claimed substance.[39] This is an example of using a preamble to intentionally limit claim scope. One does this in a new use claim[40] to distinguish from the previous use. Also, where the prior art shows the body of the claim in a different context than the present invention, a limiting preamble may cover the invention and also avoid the claim reading on the prior art.

A statement of the purpose of the invention in the preamble can be nonlimiting, as in "A method *for reducing hematologic toxicity* in a cancer patient," because it states a purpose[40.1] and the claim can be infringed even if the purpose was not always achieved.[41] Patentability "depends on structure, not on the use or purpose of that structure."[41.1]

But the opposite may be true in a particular case. In *Griffin v. Bertina*,[42] the Federal Circuit said that a claim preamble has the import that the claim as a whole suggests. The preamble is directed to diagnosing an increased risk from a genetic defect that causes

---

38.1.   Hearing Components, Inc. v. Shure, Inc., 600 F.3d 1357, 94 U.S.P.Q.2d (BNA) 1385 (Fed. Cir. 2010).

38.2.   Intellectual Sci. & Tech., Inc. v. Sony Elecs., Inc., 91 U.S.P.Q.2d (BNA) 1123 (E.D. Mich. 2008).

39.   Perricone v. Medicis Pharm. Corp., 432 F.3d 1368, 1378–79, 77 U.S.P.Q.2d (BNA) 1321 (Fed. Cir. 2005). *Contra* Marrin v. Griffin, 599 F.3d 1290, 94 U.S.P.Q.2d (BNA) 1140 (Fed. Cir. 2010).

40.   Section 6:7, *infra*.

40.1.   Marrin v. Griffin, 599 F.3d 1290, 94 U.S.P.Q.2d (BNA) 1140 (Fed. Cir. 2010).

41.   Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc., 246 F.3d 1368, 58 U.S.P.Q.2d (BNA) 1508, 1513 (Fed. Cir. 2001).

41.1.   Marrin v. Griffin, 599 F.3d 1290, 94 U.S.P.Q.2d (BNA) 1140 (Fed. Cir. 2010).

42.   Griffin v. Bertina, 285 F.3d 1029, 62 U.S.P.Q.2d (BNA) 1431, 1434 (Fed. Cir. 2002).

thrombosis. Diagnosis was therefore the object of the invention claimed. Performing the steps without the objective in the preamble would be an empty exercise. The preamble was essential.

In *Catalina Marketing Int'l, Inc. v. Coolsavings.com, Inc.,*[43] the Federal Circuit held that the preamble limitation "located at predesignated sites such as consumer stores" merely states an intended use for the claimed system and is not a claim limitation. The claimed system is structurally completely claimed in the body of the claim, while the preamble only states the purpose, benefits or intended use of the invention. Infringement was found even though the accused method would be performed at any Internet-accessible computer and not only at "consumer stores" as in the preamble. (Note the presence of "such as" in the preamble, which would be indefinite had it appeared in the body of the claim or in a preamble that is a claim element.)

Yet in *Ex parte Futo,*[44] the Board found that the claimed use of a wrench recited in the preamble for rotating plastic slip nuts, recited an environment that avoided a prior art soda bottle wrench being prior art to render the invention obvious.

Cases have dealt with method claims that appear to have unrelated entities performing different steps recited in the claims, and the courts have not found such claims infringed by any of those entities that do not perform all of the method steps.[44.1] In one case, at least, the steps performed by a nonaccused entity were recited in the claim preamble, but not in the body of the claim, while the other steps performed by the accused entity were recited in the body of the claim. The claim was held to be infringed by the accused entity,[44.2] despite the preamble mentioning the nonaccused entity's participation. The preamble was held to be environmental, not an element of the claim.[44.3]

The Federal Circuit has identified guideposts for identifying limiting preamble language:

(a)  a *Jepson* claim uses the preamble to define the invention;

(b)  dependence on a phrase in dispute to provide an antecedent basis indicates reliance on the preamble;

(c)  the preamble is needed to understand elements in the claim body;

---

43.  Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc., 289 F.3d 801, 62 U.S.P.Q.2d (BNA) 1781 (Fed. Cir. 2002); Marrin v. Griffin, 599 F.3d 1290, 94 U.S.P.Q.2d (BNA) 1140 (Fed. Cir. 2010).
44.  *Ex parte* Futo, 59 U.S.P.Q.2d (BNA) 1955 (B.P.A.I. 2000).
44.1.  *See* section 7:3.
44.2.  Advanced Software Design Corp. v. Fiserv, Inc., 641 F.3d 1368, 98 U.S.P.Q.2d (BNA) 1968 (Fed. Cir. 2011).
44.3.  *Id.* at 1374 (citing Uniloc USA, Inc. v. Microsoft Corp., 632 F.3d 1292, 98 U.S.P.Q.2d (BNA) 1203 (Fed. Cir. 2011)).

(d)   the specification emphasizes additional elements as important;

(e)   clear reliance on the preamble to avoid prior art during application prosecution.

In *Invitrogen Corp. v. Biocrest Mfg., LP*,[45] the applicant amended "E. coli cells" in the claim preamble to "E. coli cells of improved competence," which should not be viewed as structural and might be viewed as stating a purpose of the invention. But the Federal Circuit said those words were added to avoid prior art and thus infringement required a particular improvement level. The recited claim elements were not changed but the preamble narrowed the claim scope. So, reliance on a preamble element to avoid prior art makes that element in the preamble a limitation of the claim.[45.1]

In *In re Cruciferous Sprout Litigation*,[46] the court found the preamble words "rich in glucosinolates" and other words in the preamble to have been relied on to avoid prior art as helping to define the invention.[47]

In *Schumer v. Laboratory Computer Systems, Inc.*,[48] the preamble of a method claim described features that necessarily exist in any coordinate system for a digitizer, but did not describe how the device operates with respect to those features.[49] The body of the claim details the functional attributes of the device that performs the methods. The preamble was deemed superfluous.

In *Intirtool, Ltd. v. Texar Corp.*,[50] the court said that

> if the body of the claim "describes a structurally complete invention such that deletion of the preamble phrase does not affect the structure or steps of the claimed invention," the preamble is

---

45.    Invitrogen Corp. v. Biocrest Mfg., LP, 327 F.3d 1364, 66 U.S.P.Q.2d (BNA) 1631 (Fed. Cir. 2003). *See* Vita-Mix Corp. v. Basic Holding, Inc., 581 F.3d 1317, 92 U.S.P.Q.2d (BNA) 1340 (Fed. Cir. 2009).

45.1.  *See* Hearing Components, Inc. v. Shure, Inc., 600 F.3d 1357, 94 U.S.P.Q.2d (BNA) 1385 (Fed. Cir. 2010) ("readily installed" was added to a claim to avoid prior art, and that phrase was held to limit claim scope).

46.    *In re* Cruciferous Sprout Litig., 301 F.3d 1345, 64 U.S.P.Q.2d (BNA) 1202, 1205 (Fed. Cir. 2002).

47.    *See* Storage Tech. Corp. v. Cisco Sys., Inc., 329 F.3d 823, 66 U.S.P.Q.2d (BNA) 1545 (Fed. Cir. 2003). *See* Computer Docking Station Corp. v. Dell, Inc., 519 F.3d 1366, 86 U.S.P.Q.2d (BNA) 1129 (Fed. Cir. 2008); Hearing Components, Inc. v. Shure, Inc., 600 F.3d 1357, 94 U.S.P.Q.2d (BNA) 1385 (Fed. Cir. 2010).

48.    Schumer v. Lab. Computer Sys., Inc., 308 F.3d 1304, 64 U.S.P.Q.2d (BNA) 1832 (Fed. Cir. 2003).

49.    *Cf.* Microprocessor Enhancement Corp. v. Tex. Instruments, Inc., 520 F.3d 1367, 86 U.S.P.Q.2d (BNA) 1225 (Fed. Cir. 2008).

50.    Intirtool, Ltd. v. Texar Corp., 369 F.3d 1289, 1295, 70 U.S.P.Q.2d (BNA) 1780, 1784 (Fed. Cir. 2004) (citations omitted).

generally not limiting unless there is "clear reliance on the preamble during prosecution to distinguish the claimed invention from the prior art."... Here, the preamble does not recite any "additional structure or steps underscored as important by the specification"....

These are tests for the preamble having to be considered as a limiting claim element.

These cases show different treatments of preamble recitations. But if the preamble lacks unnecessary words, there is no interpretation issue raised.

There is nothing to gain by having an overlong preamble, with many elements recited. Each may become a claim limitation which a later copyist could avoid using.

Since cases appear to go in different directions as to when a preamble element is to be considered part of a claim, the writer should make that decision and then clearly make it an element in the body of the claim, if that is decided, or not refer to the element at all, or not as more than a workpiece if it is not to be an element of the claim.[50.1] Recommended preambles for different types of claims are set out in subsequent parts of this treatise.

### Summary

*Use descriptive preambles defining the nature of the combination claimed. Do not put unnecessary limitations even in the preamble. Assume every word you write in a claim is critical, and may some day be used against your client, to restrict the scope of his invention.*

## § 2:5    Transition from Preamble to Body—"Comprising" and Other Open-Ended Terms

Most ordinary combination claims require a transitional word or phrase between the preamble (naming the thing to be claimed) and the body of the claim (defining what the elements or parts of the thing are). Two recommended forms of transition that can be employed for most claims are the phrases: "which comprises" or "comprising." The choice between the two is immaterial.

The word "comprises" has been construed to mean, in patent law, "including the following elements but not excluding others."[51] The

---

50.1.   *See* Marrin v. Griffin, 599 F.3d 1290, 94 U.S.P.Q.2d (BNA) 1140 (Fed. Cir. 2010).

51.     M.P.E.P. § 2111.03; Moleculon Research Corp. v. CBS, Inc., 229 U.S.P.Q. (BNA) 805, 812 (Fed. Cir. 1986); Hydro-Thermal Corp. v. Pro-Sonix, LLC, ___ F. Supp. 2d ___, 96 U.S.P.Q.2d (BNA) 1055 (E.D. Wis. 2010).

## § 4:2    Elements of Method Claims

Generally, the verbs in a method claim need not be phrased in any particular voice or tense as long as there is no ambiguity and the requirements of section 112 are met.[10] Nevertheless, it must be remembered that the elements of a method claim are method *steps*, which should usually be verbal (gerundial) phrases, introduced by a gerund or verbal noun (the "-ing" form of a verb), such as (the gerunds are italicized):

   (a)   *reciprocating* the guide . . .

   (b)   *punching* a series of holes . . .

   (c)   *impressing* a signal . . .

   (d)   *coating* the sheet with an adhesive . . .

   (e)   *heating* the mixture to a temperature of . . .

   (f)   *separating* the alcohol from the aqueous solution . . .

   (g)   *distilling* the aqueous solution to *separate* the alcohol therefrom . . .

   (h)   *fractionally crystallizing* the aqueous solution to separate the alcohol there from . . .

   (i)   *permitting* the mixture to cool . . .

The three steps ("separating," on the one hand, and "distilling" or "crystallizing," on the other) illustrate, respectively, generic and two species method steps (see section 6:9).

One should be aware that as to the format of step (g), examiners sometimes express a preference for language similar to the following: "(g') *separating* the alcohol from the aqueous solution *by distilling* the solution. . . ." The argument favoring such wording is along these lines: "Regarding the phrase 'distilling . . . to separate,' [as in step (g)] one *could* distill the solution, yet never achieve alcohol separation. Such separation being the ultimate goal of the step, it (separation) should be *more positively recited* by being made the introductory gerund of the clause ["separating . . . by distilling," as in step (g')] which sets forth the step."

It is believed that this is fallacious reasoning. First, steps (g) and (g') may be seen to cover exactly the same territory logically and semantically. Second, an objection to the *form* of a step written as step (g) ignores the expressly stated *substantive* limitation therein of

---

10.   *Ex parte* Lewin, 154 U.S.P.Q. (BNA) 487 (B.P.A.I. 1966).

"distilling . . . to separate." This limitation *requires* that the distillation effect the separation. Third, an administrative preference for one or the other form of the step ignores the reasonable latitude permitted by decisions such as *Lewin*,[11] cited at the beginning of this section. Fourth, seemingly ignored are the principles set forth in the next paragraph.[12]

The choice of which word (gerund) to use for introducing a method step is similar to the choice of which word to use for describing elements in apparatus claims. Generally, one chooses the broadest word the prior art will allow. Thus, in step (g), "distilling" is narrower than step (f) "separating." One may recite a generic or broad step, such as "separating," that is really a function or result of a more specific act such as "distilling" or "crystallizing." Moreover, it is permissible for a method step to recite some condition or property without reciting in the claim every step necessary to obtain or achieve that condition or property.[13] For example, "distilling" alone in step (g) should be sufficient. There should usually be no need, in place of "distilling," to recite "*placing* the aqueous solution in a (certain) container . . ."; "*heating* the solution to a (certain) temperature . . ."; "*condensing* the alcohol vapors . . ."; etc. Of course, the terms used must find some antecedent in the disclosure. Preferably, therefore, the word appearing in the claim can be found in the specification, where it will have also been defined or explained or how it relates to the subject of the invention will have been described. Often, the word used is itself so clear in its meaning, like "heating" or "separating," that explanation of the word is not needed and its simple or mere mention by use of the precisely same word or a clearly equivalent word in the supporting specification is a sufficient antecedent. However, where the step or process procedure is not clear from the word used (for example, distilling in a particular context, like wine or petroleum, needs more explanation), the mere word "distilling" is not detailed enough, and its component parts, heating and separating, may also have to be recited.

---

11.   *Id.*
12.   If the two formats, (g) and (g'), however, truly *are* the same, one would usually be foolish to "fight" the examiner on the point. There are usually more important issues present, and a firm stand by the applicant on one particular format may not, in the words of Cicero, "render the audience [here, the examiner] benevolent" as to more substantive issues.
13.   *In re* Roberts & Burch, 176 U.S.P.Q. (BNA) 313 (C.C.P.A. 1973); *In re* Alul & McEwan, 175 U.S.P.Q. (BNA) 700 (C.C.P.A. 1972); *In re* Rainer, 134 U.S.P.Q. (BNA) 343 (C.C.P.A. 1962). Of course, either the specification must disclose, or a person skilled in the art must know, how to achieve the condition or property.

Pragmatically, the choice of what gerund to use is really of little moment as to the form of the claim. Moreover, 35 U.S.C. § 112 states (in the same paragraph sanctioning "means plus function" clauses) that:

> An element in a claim for a [method] combination may be expressed as a . . . step for performing a specified function without the recital of . . . acts in support thereof, and such claim shall be construed to cover the corresponding . . . acts described in the specification and equivalents thereof.

Thus, the statute expressly sanctions the use of broad functional steps, such as "separating," where the prior art permits, rather than the specific *act*, "distilling." The interpretation of this language is similar to that described under "means claims" in section 3:29: the claim *"shall* be construed to cover the corresponding . . . acts described . . . and equivalents. . . ."  Consequently, as with means clauses, the scope of protection afforded is exactly as broad as "the invention" disclosed in the specification, plus equivalents. Although "step of" clauses may be used whenever the prior art permits, their scope may be more restricted under applicable precedent than a clause with more specific language on the method step. For example, in (f) or (g) above, one could recite "the step of separating" or "performing a step separating" or other equivalent language which could be governed by section 112. Better now would be to use the actual recital of a process step, "separating," or perhaps "distilling to separate" or "distilling for separating." The latter two phrases would now likely be governed by section 112, and might be restricted merely to the steps disclosed in the specification and their equivalents (see section 3:29).

The distinction between acts and steps is probably more academic than real, as very few, if any, cases focus on the difference in concept between a functional step and the act done to perform the step. As with "means claims," such functional step clauses must be limited to claims to *combinations*. In concept, a single-step method claim is all right (see section 4:1) only when the step is an act.

The preamble of a method claim may be almost the same as that of a mechanical claim. Generically, the following preamble format is usually appropriate: "A *method* of (or process for) performing a specified act (or operation) on a particular article (or workpiece or chemical substance) which comprises: . . ." Except for the words "a method" this format is identical to the format proposed in section 3:2 for apparatus claim preambles. Note that the workpiece is properly placed in the preamble, just as it is in the apparatus claims (see section 3:3). In the broader claims, avoid describing the workpiece or article any more narrowly than the prior art requires, which would be an "unnecessary article limitation" in the words of the

*Method or Process Claims*                                      § 4:2

Patent and Trademark Office comments on grading Agent's Exam method claims. The preamble is not locked into a particular format, and can be shorter than the above suggestion, as the invention warrants.

Another similar preamble format ends with the transition words "which comprises *the steps of:* . . . ." The choice between these and equivalent forms is a matter of style. Equivalents of "comprises" are used: "includes," "has." The words "the steps of" or equivalents might not be used (see Example III in chapter 3).

Referring again to the take-up barrel of Example III (see section 3:29.20, above) a method claim relating thereto might read:

4.   A method of collecting an advancing strand in a barrel, which comprises:

(a)   *guiding* the advancing strand into the barrel;

(b)   *rotating* the barrel so that the point of collection of the strand varies circularly with respect to the bottom of the barrel; and

(c)   *reciprocating* a guide point above the barrel so that the point of collection varies radially with respect to the bottom of the barrel.

Note the similarity in form to the apparatus claim in section 3:29. If the title of Claim 4 were changed to "Apparatus for . . ." and the phrase "means for" were inserted before each step, one would have a proper apparatus claim (at least as to form). This is typical of most method claims: Add the words "means for" to transform a method step into an apparatus element. Similarly, where an apparatus element is expressed in "means for" fashion, deletion of that phrase usually results in a proper (as to form) method step. Thus, method and apparatus claims can be of comparable scope and equally broad or narrow. Where the practitioner elects to include both apparatus and method claims in a specification, it would not be unusual to have at least some of the two types of claims analogous, that is, the method steps in a method claim become "means for" clauses in the analogous apparatus claim. As is elsewhere recommended, where an invention permits, different classes of claims should be used to cover an invention. Where an apparatus accomplishes something in a series of operations, the series can be claimed in a series of steps in a method claim.

Further examples of method claims of many kinds are given in Appendix A.

**Summary**

*The elements of a method claim are acts or steps, customarily phrased as gerunds ("heating"). They can be broad or narrow, depending on the prior art, and functional step clauses ("separating") can be used, corresponding to means clauses where the function performed, not the act used to do it, is the important thing. Single step method claims are permitted where the step is an act, not a functional step.*

## § 4:3   Order of Steps

The elements (steps) of a method claim must, of course, also be set forth in some logical order. The order of listing the elements in method claims is usually clearer than in mechanical claims. The elements of a method claim are typically recited in the sequence in which the steps are performed. If the claim does not expressly indicate that steps are performed simultaneously or in a different order than the sequence in which the elements appear, the reader of the claim will assume the steps are performed in the sequence of their appearance. But unless the sequence of steps is expressed in the claim, the sequence is not being claimed[14] and another sequence may be either prior art to the claim or an infringement of the claim.[15] If the nature of the method requires a sequence different than the order of the elements, then the reader will not read the claim in the usual way. (Of course, mechanical claims have their logical sequence of elements too, as noted above at section 3:21.)

In the method of Claim 4, all three steps ("guiding," "rotating," and "reciprocating") occur simultaneously, each to accomplish its respective result and all to accomplish the intended result stated in the preamble so that, as written, either clause (b) or (c) could immediately follow step (a). It would be illogical to put step (a) last or in the middle. Steps (b) and (c) each modify the activity described in step (a). If one step modifies what is being done in or what has been accomplished by another step, the step modified should precede the modifying step. While a reader familiar with Claim 4 herein and the disclosure in the specification supporting that claim would realize that steps (b) and (c) should be performed simultaneously, better claim form would be to tell the reader, by reciting at the beginning of element (c) "while

14.   Bio-Tech. Gen. Corp. v. Duramed Pharm., Inc., 325 F.3d 1356, 66 U.S.P.Q.2d (BNA) 1360 (Fed. Cir. 2003) (sequence of taking a regimen of pharmaceuticals could be changed and still be within a method claim reciting a different sequence without requiring it).

15.   Altiris, Inc. v. Symantec Corp., 318 F.3d 1363, 65 U.S.P.Q.2d (BNA) 1865 (Fed. Cir. 2003).